The bill of complaint herein is directed against the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Local No. 617, Jeremiah Buckley, Charles Jennings, Patrick Joyce and John Allen. Buckley is named therein as business manager and secretary and treasurer of said local; Jennings is named therein individually and as president of said local; Joyce is named therein as vice-president of said local, and Allen is named therein as trustee of said local. The complainants by their bill pray inter alia for the appointment of a custodial receiver-trustee for divers purposes mentioned in the prayer, for an injunction, and for an accounting. Considerable of the relief sought by the prayer of complainants' bill may be obtained only after final hearing, upon substantiation, by adequate proof, of the allegations in the bill. No answer has been filed by or in behalf of any of the defendants. Affidavits in answer to the allegations of the *Page 499 
bill and supporting affidavits have been filed in behalf of defendants Buckley, Jennings, Joyce and Allen. The bill of complaint and supporting affidavits prima facie manifest a state of facts demonstrating a deplorable and reprehensible situation grievously affecting the property rights of complainants for which they cannot have an adequate remedy at law. The complaint is in the nature of a class or representative bill filed not only for the benefit of the complainants themselves but for all others suffering a similar grievance as stated by the complainants, who desire to join as parties complainant. Although the bill appears to be inartistically drafted, it nevertheless substantially manifests an equitable cause of action. Prima facie the bill and supporting affidavits show perpetration of a palpable fraud upon the complainants and many other persons engaged in employment as inside workers in cleaning and dyeing establishments. The aforesaid local is composed of teamsters, chauffeurs, stablemen and helpers, and appears to be affiliated with the American Federation of Labor. The complainants' proofs evince that the defendants, and particularly the defendants Buckley and Jennings, practiced a gross deception upon the complainants, and many other persons, engaged as inside workers in cleaning and dyeing establishments located in Union City, New Jersey, and elsewhere, in that said complainants were impressed and led to believe by said defendants that complainants, together with many other persons engaged as inside workers in cleaning and dyeing establishments, were enrolled in membership in a labor organization known as "Local Union No. 617, Cleaners and Dyers," whereas, in fact, no such labor organization existed. It is alleged, and the proofs primafacie establish, that the defendants, in furtherance of their aforesaid fraudulent scheme and purpose, issued to complainants, and to many other persons employed as inside workers in cleaning and dyeing establishments, what purported to be a member's official due card consisting of a red cardboard book, with a black binding, upon the outside of which is printed "Local Union No. 617, Cleaners and Dyers Membership Book." On the inside of said book appears twenty-four squares with the names of the months of the year printed *Page 500 
therein, the object of the squares being to enable the pasting therein of stamps required to be purchased by members from the defendants to serve as receipts for the payment of dues (and in some instances initiation fees) ostensibly payable by "members" to whom such dues books were issued. The defendants Buckley and Jennings appear from the proofs herein to have been the prime movers in the prosecution of the aforesaid fraudulent membership scheme. The proofs show that it was represented to the complainants and others who together with them were induced to become members of "Local Union No. 617, Cleaners and Dyers," by the defendants Buckley and Jennings, that said organization (which as indicated herein did not in fact exist) was affiliated with the American Federation of Labor. In view of the fact that no answer or answering affidavits have been filed in behalf of the defendant local, I must regard as true, for the purpose of the matter sub judice, the averments contained in the complainants' bill and affidavits in support thereof, applicable to said local. Many statements are contained in the bill of complaint and supporting affidavits, alleged to be facts, which are not denied by the defendants. The relief prayed by complainants is predicated upon the general equity power of the court. Not only are questions of fraud involved herein, but it appears that a question of trust is involved, in that moneys were obtained from complainants and others which were intended for the establishment of a trust fund, which fund, it is alleged, was created by the defendant local (but not by the labor organization known as "Local Union No. 617, Cleaners and Dyers," of which complainants considered themselves as members) for which there is no trustee. Complainants urge that the moneys constituting such trust fund were illegally obtained from them by means of the fraud practiced upon them, as hereinabove mentioned, and that this court should appoint a trustee therefor pendente lite to conserve such funds until the final hearing of the cause, and to prevent diversion or dissipation of such funds in the interim. Manifestly a determination of the merits of the case must await final hearing when all parties are afforded an opportunity of presenting their proofs, and witnesses may be subjected to cross-examination. *Page 501 
Experience teaches that ex parte affidavits may not be relied upon with certainty, but it appears to me that a sufficientlyprima facie case has been established by complainants to warrant the court to appoint a receiver-trustee herein to conserve for all parties in interest, pendente lite, the moneys now in possession of said local which is said to represent a portion of the moneys alleged to have been unlawfully obtained from complainants as hereinabove mentioned, and also to take possession of the record books and papers of said local containing entries relative to the transactions between the parties hereto. That this court has an undoubted inherent jurisdiction to appoint a custodial receiver-trustee in a case such as sub judice is beyond question; it does not depend upon or require statutory authority therefor. The proofs herein establish prima facie activities by the defendants, which, if true, manifest reprehensible mismanagement of affairs of the local entrusted to them, and gross violation of confidence reposed in them by members of the local. The proofs also establish prima facie that defendant Buckley resorted to means of coercion, intimidation and extortion in the perpetration of the fraud practiced upon the complainants in effecting and maintaining their membership in International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Local No. 617, under the pretense that complainants were members of "Local Union No. 617, Cleaners and Dyers." It was conceded by counsel for the defendants, in argument, that there is no such labor organization existing in Hudson county or elsewhere as "Local Union No. 617, Cleaners and Dyers," and such concession is corroborative of the complainants' claim herein of fraud perpetrated upon them with respect to deception practiced upon them by the defendants in pretending they were made members of a labor organization known as "Local Union No. 617, Cleaners and Dyers," when in fact they appear to be members of International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Local No. 617, although not eligible for membership therein. The constitution and by-laws of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America provides (section 3) that the organization *Page 502 
has jurisdiction over all teamsters and helpers, chauffeurs and helpers, stablemen and all who are employed on horses, harness, carriages or automobiles, in and around stables or garages, other than mechanics, and (section 4) that any members of the international organization going to work at another craft must be given an honorable withdrawal card, and cannot remain a member of the international organization. It was argued by counsel for the defendants that section 83 of said constitution and by-laws authorized employes of cleaning and dyeing establishments to be members of the Teamsters, c., Local No. 617, but such argument is untenable. The official dues book of Teamsters, c., Local No. 617, appears to be a black pasteboard covered book, and such book appears to have been utilized by defendants by the issue thereof to employes of cleaning and dyeing establishments, ostensibly members of Local No. 617. Such books have printed upon the first inside pages thereof "American Federation of Labor Membership Book and Working Card." Dues stamps pasted therein vary, some of them are stamps issued by the American Federation of Labor and some of them are stamps issued by the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers. It appears by the affidavit of Michael Tarakajian that on or about February 14th, 1933, he wrote a letter to the American Federation of Labor, American Federation of Labor Building, Washington, District of Columbia, inquiring as to the possibilities of organizing a local union of retail cleaners and dyers of Hudson county, New Jersey; that Frank Morrison, secretary of the American Federation of Labor, by letter dated February 23d 1933, replied to the affiant's said letter; that on March 23d 1933, said affiant wrote another letter addressed as aforesaid to the American Federation of Labor and received a reply thereto from Frank Morrison, secretary of said body. The affiant forwarded with one of such letters a red pasteboard dues book (No. 1492) purporting to have been issued by "Local Union No. 617, Cleaners and Dyers," which contains what purport to be entries of dues receipts acknowledged by the defendant Buckley. Attached to said affidavit are photostat copies of letters addressed to said affiant by Frank Morrison, *Page 503 
secretary of the American Federation of Labor, bearing date February 23d 1933, and March 27th, 1933, respectively. The letter of February 23d reads inter alia:
"* * * Our records show that Retail Cleaners and Dyers Union No. 18063 of Hudson County, N.J., was chartered March 25th, 1929, and suspended November 20th, 1929. * * * According to our records, local No. 617, mentioned in your letter, is a local of the Teamsters' organization, and not a union of Cleaners and Dyers. * * *."
The letter of March 27th reads inter alia:
"* * * You advise that the members of this local are employes of the cleaning and dyeing industry of Hudson County and are employed in the following capacity: Solicitors and inside workers composed of Benziners, Spotters, Pressers, Dyers and Helpers. We would like for you to explain what the benziners do. The American Federation of Labor can issue a charter for Cleaners, Dyers and Pressers but cannot incorporate the word `Solicitors.' The solicitors come under the team drivers. We would issue a charter for Retail Cleaners, Dyers and Pressers. It will be necessary for you to have the application endorsed by the Central Labor Union of Hudson County. I am sending a copy of the application to our Organizer, Mr. Charles J. Jennings, 281 Van Nostrand Avenue, Jersey City, N.J., asking him to get in touch with you for the purpose of perfecting the application so that charter may be issued. The card marked `1492 Local Union No. 617 Cleaners and Dyers Membership Book,' which you attached is not the card of the American Federation of Labor. Without question it is an independent organization and should not be recognized. I am enclosing a sample card that is used by the members of our Local Unions. I am also returning the card which you enclosed in your letter as per your request."
The card which Secretary Morrison returned to the affiant was a black covered card hereinabove referred to. The card marked "1492, Local Union No. 617, Cleaners and Dyers Membership Book," is a red cardboard card hereinabove referred to. It thus appears from the letter of the secretary of the American Federation of Labor that such red pasteboard membership book "1492, Local Union No. 617, Cleaners and Dyers," is not an organization recognized by the American Federation of Labor, and this further corroborates the allegations of the complainants of fraud having been practiced upon them, as hereinabove mentioned. It is clearly manifest from the aforesaid statement of the secretary of the American Federation of Labor (with which the Teamsters, c., Local *Page 504 
No. 617, is said to be affiliated) that complainants as employes of the cleaners and dyers industry were not recognized as "Local Union No. 617, Cleaners and Dyers," as affiliates of the American Federation of Labor, and consequently is not authoritatively affiliated with Teamsters, c., Local No. 617, which is said to be in affiliation with the American Federation of Labor. Counsel for the defendants, in argument, proffered to the court by way of proofs in behalf of the defendants, a letter addressed to the defendant Jennings by Frank Morrison, secretary of the American Federation of Labor, relating to correspondence which passed between Morrison and the aforesaid Michael Tarakajian, and proffered also a telegraph despatch addressed to the defendant Buckley by William Green, president of the American Federation of Labor. While I do not consider either thereof to be of probative force herein I nevertheless permitted counsel to file same whereby the defendants may obtain such beneficial use thereof as they may, by way of evidence, if such may be regarded as evidence, notwithstanding I do not consider same to be such. Complainants' proofs indicate that upwards of $50,000 was collected by defendants from complainants and others employed in dyeing and cleaning establishments as initiation fees, dues, c., upon the pretense that complainants were members of "Local Union No. 617, Cleaners and Dyers," and that such organization was authoritatively affiliated with Teamsters, c., Local No. 617. Defendants (other than Teamsters, c., Local No. 617) have caused affidavits to be filed herein denying the receipt of such a large sum of money, and denying the receipt of various sums alleged to have been paid to them, and particularly to the defendant Buckley, by complainants and others. The constitution and laws relating to the Teamsters, c., Local No. 617, require members to purchase stamps from the treasurer of the local, to be affixed to the members' dues books as evidence of payment of dues. Various membership books which have been submitted to me in my consideration of the matter sub judice evince a flagrant violation of the laws of the organization in such respect. Such books manifest numerous instances of entries made by the defendant Buckley purporting to acknowledge the receipt of dues, but *Page 505 
inasmuch as such entries are contrary to the laws of the organization and stamps were not used to evidence such dues payments, as required by such laws, it is possible that dues thus received by the defendant Buckley were not accounted for by him. When stamps are not purchased to evidence such dues paid it may be difficult for members to prove payment of their dues. As further evidence that the defendant Buckley imposed upon the complainants and others in a fraudulent manner, reference to a typewritten agreement purporting to have been entered into between Hudson Cleaners and Dyers and "Local Union No. 617, of the Drivers, Solicitors, Cleaners, Dyers, Pressers, Spotters, Benziners and all other inside workers who come under the jurisdiction of this agreement" is enlightening. Such agreement purports to have become effective April 14th, 1932, terminating April 14th, 1933. It is signed "Jeremiah Buckley, Bus. Agent for Local Union 617." A similar agreement, likewise signed, relates to S. Z. Cleaners and Dyers with "Local Union No. 617, of the Drivers, Solicitors, Cleaners, Dyers, Pressers, Spotters, Benziners and all other inside workers who come under the jurisdiction of this agreement." When it is considered that there is no such organization existing as mentioned in the aforesaid agreements entered into between the defendant Buckley asbusiness manager of Local Union No. 617 of the Drivers, Solicitors, Cleaners, Dyers, Pressers, Spotters, Benziners and all other inside workers, and Hudson Cleaners and Dyers and S. 
Z. Cleaners and Dyers, the fraud alleged by complainants is clearly palpable. A photostat copy of a letter bearing date March 17th, 1932, addressed by J.J. Buckley, secretary-treasurer, to United Cleaners Dyers, 125 Forty-third street, Union City, New Jersey, which reads: "Enclosed herewith find copy of agreement for the year starting April 14th, 1932, and ending April 14th, 1933," is indicative that another such agreement was signed by the defendant Buckley as an official of a non-existing organization, Local Union No. 617, relating to the cleaners and dyers industry. The defendants Buckley and Jennings have not stated in affidavits submitted by them that they accounted to the Teamsters, c., Local No. 617, for dues, c., collected from complainants and others as employes *Page 506 
in the dyers and cleaners industry. Nor is there anything contained in the affidavits of either of said parties indicative of complainants and others employed in the cleaning and dyeing industry being regularly admitted to membership in Teamsters,c., Local No. 617. Nor is there anything contained in such affidavits indicating that Teamsters, c., Local No. 617, was authorized by either the American Federation of Labor or the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America to admit complainants and others employed in the dyeing and cleaning industry to membership or affiliation with Teamsters, c., Local No. 617. Without such authority the defendants Buckley et al., ostensibly were unauthorized to collect dues, c., from complainants. In the recent past our courts, through court proceedings, have been made cognizant of a disreputable condition in labor circles in New Jersey brought about by officious and dishonest business managers and other officers of local labor organizations. Such a condition cannot be countenanced by a court of equity when aggrieved parties resort to said court for equitable relief in cases where such relief may be afforded. Labor unions when properly and honestly conducted have a proper sphere in the business world, but when it is shown that those to whom have been entrusted the conduct of such labor organizations have not only been unfaithful to the trust reposed in them by their fellow members, but have grievously mismanaged the affairs entrusted to them, and have been dishonest in their practices, to the detriment of those whom they were elected to serve and represent, the unfaithful ones should be ousted from their position of trust and others appointed in their stead. I appreciate that the authority of officers of a labor organization in the conduct of the business of such organization should be regarded as absolute when they act within the law, but when they flagrantly transgress the law a court of equity should afford relief to persons aggrieved by such transgression, particularly where the aggrieved have no adequate remedy at law. The opinion of the court of errors and appeals in the case ofWalker v. Walker Realty Co., 103 N.J. Eq. 300, and Shuster
v. Ventnor Gardens, Inc., Ibid. 93, though relating to insolvent *Page 507 
corporations are nevertheless applicable, in my judgent, to the defendant local, notwithstanding it is an unincorporated body, and to the defendants Buckley, Jennings, Joyce and Allen. Such opinions manifest that the judicial policy of the State of New Jersey is opposed to the continuance in control, directly or indirectly, of officers against whom is made out a prima facie
case of wrongdoing in office, and of officers who appear to have used their official positions to the detriment of those whom they were elected to serve. There is a distinction between appointment of a custodial receiver-trustee pursuant to the general equity powers of the court of chancery, and the appointment by said court of a statutory receiver of a corporation in an insolvency proceeding. I am of the opinion that a custodial receiver-trustee should be appointed pendente lite, and I will advise an order accordingly. The appointment of such custodial receiver-trustee will not effect the divesting of the defendant Local No. 617 of its title to property. The effect of the appointment will be to conserve pendente lite the property of such defendant local, and will safeguard the property and interests of said defendant local and the members thereof pending the final hearing of the cause set up in the bill of complaint herein. The primary purpose of the custodial receiver-trustee will be to take into his possession and conserve pendente lite the moneys of the local, as well as books of account and papers and records of the defendant local which may reasonably be necessary for an accounting sought by the complainants herein. If such appointment be not made in limine it is apparent to me from the proofs herein and the character of the defendant Buckley, particularly as evidenced by the complainants' proofs — said defendant being business manager, secretary and treasurer of the defendant Local No. 617, that books and records which will be necessary for an accounting between the parties hereto are likely to be altered, mutilated or lost before the time of final hearing. The appointment is also necessary to conserve such moneys as remain in the treasury of the local which appear prima facie to be unlawful gains for which an accounting must be made to complainants. It appears to me a final decree in favor of complainants will be futile if a custodial *Page 508 
receiver-trustee be not appointed. In conclusion I deem it advisable to say that the complainants, notwithstanding their action in this court for the relief sought by their bill of complaint, are not estopped from complaining to the prosecutor of the pleas of the county of Hudson of the palpable fraud practiced upon them by means of which large sums of money appear to have been unlawfully extorted from them. The prosecutor of the pleas may appreciate the expediency of investigating from a criminal point of view the activities of the defendants in the premises. I will designate John J. Lenehan of No. 15 Exchange Place, Jersey City, as custodial receiver-trustee and require him to furnish a bond in the sum of $3,000, the premium for which to be paid from the funds of the defendant local.